*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEITH J. MITAN,

      Plaintiff/Counterdefendant-Appellant,

v

FARMINGTON SQUARE CONDOMINIUM ASSOCIATION,

      Defendant/Counterplaintiff-Appellee,

and

JOHN P. CARROLL CO, INC., and CHELSEA EVASIC,

      Defendants-Appellees,

and

MAKOWER ABBATE AND ASSOCIATES, PLLC,

      Defendant.

UNPUBLISHED
July 25, 2024

No. 364595
Oakland Circuit Court
LC No. 2018-165641-CZ

Before: JANSEN, P.J., and REDFORD and SAWYER*, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's orders granting defendants' renewed motion for summary disposition of plaintiff's reinstated claims under MCR 2.116(C)(10) (no genuine issue of fact) and granting summary disposition and entering judgment in favor of defendant Farmington Square Condominium Association ("Farmington Square") on its counterclaim for foreclosure of a lien for unpaid condominium assessments. We affirm.

———————————

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

This is the second time that this case has been before this Court. A panel of this Court summarized the relevant background in *Mitan v Farmington Square Condo Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2021 (Docket No. 350053), p 1-4:

Plaintiff is the son of Frank Mitan, Jr., who died in 2010. Following the death, plaintiff assumed the role of personal representative of his father's estate, which remains open. Plaintiff's father previously owned a condominium unit in the Farmington Square Condominium Complex. Title to the condominium unit is now held by the estate. In May 2018, plaintiff filed this action against Farmington Square and its management company, defendant John P. Carroll Company, Inc. [JP Carroll]. Plaintiff filed an amended complaint adding Chelsea Evasic, who worked for [JP Carroll] as a property manager responsible for the condominium complex, and Makower Abbate & Associates, PLLC, as defendants.[1]

The substance of plaintiff's claims derived primarily from problems encountered by a tenant of the estate's condominium unit and Farmington Square's efforts to collect unpaid condominium assessments. Farmington Square had recorded a notice of lien against the unit. According to plaintiff's complaint, the tenant was unable to access a service room in the building for a two-week period because the key to the room had been lost, which prevented the tenant from changing his Internet service provider during that period. As relevant to this appeal, plaintiff's amended complaint included claims for private nuisance, breach of the condominium's master deed, a third-party beneficiary claim against [JP Carroll] for breach of its management agreement with Farmington Square, a violation of the Condominium Act, MCL 559.101 *et seq.*, and breaches of Farmington Square's bylaws. In several of the allegations contained in the complaint, plaintiff referred to the damages incurred by "the Estate." Farmington Square filed a counterclaim for foreclosure of its lien and money damages for delinquent assessments. The counterclaim named "Keith J. Mitan, . . . personal representative for the Estate of Frank Mitan[,]" as counterdefendant. Plaintiff filed an answer to the counterclaim, denying nearly all of the allegations.

Defendants jointly moved for summary disposition of all of plaintiff's claims under MCR 2.116(C)(10). Defendants argued that plaintiff's claims should be dismissed because all of the claims belonged to the estate, and plaintiff was not permitted to represent the estate given that a pro se litigant cannot appear on behalf of a probate estate.[3] Defendants further contended that plaintiff did not have standing to bring the estate's claims in his individual capacity and that any alleged assignment of the estate's claims to plaintiff was invalid.

Farmington Square additionally moved for summary disposition of its counterclaim to foreclose its lien, arguing that there was no genuine issue of material fact that there were unpaid condominium assessments for which it had

-2-

filed a valid lien. And it again argued that plaintiff could not appear in propria persona to defend the counterclaim on behalf of the estate.

In response, plaintiff agreed that he could not prosecute any claims on behalf of the estate, but he maintained that all causes of action had been assigned to him by the estate before the action was filed and that he had the right to appear in propria persona to prosecute his individual claims. Plaintiff relied on two assignments to establish his right to pursue the causes of action in an individual capacity . . . .

* * *

Plaintiff also moved for summary disposition of his claims under MCR 2.116(C)(10).

The trial court issued a written opinion and order that granted defendants' motion for summary disposition under MCR 2.116(C)(10), denied plaintiff's competing motion for summary disposition, and dismissed all of plaintiff's claims. The court ruled that plaintiff could not represent the estate in propria persona and that plaintiff's use of his role as personal representative to unilaterally assign the estate's claims to himself violated MCL 700.3709. Accordingly, the trial court held that the assignments were invalid. The court also found that plaintiff failed to establish entitlement to the estate's claims under MCL 700.2404. Therefore, the trial court ruled that "[p]laintiff's claims are subject to summary disposition due to his unauthorized practice of law and invalid assignments."

With respect to Farmington Square's counterclaim, the trial court acknowledged that because the estate continued to be administered by the probate court, Farmington Square could not obtain a money judgment against the estate in circuit court. The court ruled, however, that it had jurisdiction over the claim to foreclosure the condominium lien. The court determined that there was no genuine issue of material fact regarding Farmington Square's entitlement to foreclose on the lien. The court entered a judgment of foreclosure for unpaid assessments in the amount of $3,689, late fees in the amount of $380, costs in the amount of $696.90, and attorney fees in the amount of $10,263.50 . . . .

---

[1] Makower Abbate & Associates, PLLC, was later dismissed by stipulation of the parties.

[3] Plaintiff is a former licensed attorney who has been suspended from the practice of law since 2009. Therefore, he was not permitted to appear as counsel for the estate. A nonlawyer attempting to proceed *in propria persona* on behalf of an estate is engaged in the unauthorized practice of law in contravention of MCL 600.916. *Shenkman v Bragman*, 261 Mich App 412, 416; 682 NW2d 516 (2004).

---

In the previous appeal, the panel agreed with plaintiff that the trial court lacked subject-matter jurisdiction to determine the validity of the assignments because "only the probate court had jurisdiction to determine whether the assignments were valid." *Mitan*, unpub op at 4. The panel held that "absent an order from the probate court approving the assignment of claims from the estate to plaintiff individually, plaintiff lacked standing to pursue the instant lawsuit." *Id.* Therefore, the panel affirmed the dismissal of plaintiff's lawsuit. *Id.* at 9. However, the panel also sua sponte reversed the foreclosure judgment because the counterclaim for foreclosure involved an action against the estate, which was not properly represented in this matter. *Id.* at 8-9. Accordingly, this Court remanded the case for further proceedings. *Id.* at 9.

On remand, the case was assigned to a new judge because the preceding judge was no longer with the court. The trial court permitted plaintiff to reinstate his original claims after he obtained an assignment of the estate's interest in those claims from the probate court. Defendants renewed their motion for summary disposition of plaintiff's claims. The trial court granted defendants' renewed motion on April 27, 2022, and again dismissed all of plaintiff's remaining claims against defendants. Although plaintiff thereafter moved to amend his complaint, the trial court denied plaintiff's motion.

Farmington Square also again moved for summary disposition of its counterclaim, relying in part on the affidavit of Sheri Kay for assertion of the association fees owed. The trial court granted and entered a judgment of foreclosure. The court determined that plaintiff was liable for $11,765.40 in delinquent assessments and liable for additional costs, late fees, and attorney fees, resulting in a total lien amount of $36,319.62, for which Farmington Square was entitled to a judgment of foreclosure. The trial court denied plaintiff's request for an evidentiary hearing on the issue of attorney fees. After entry of the order, plaintiff moved for relief from judgment and asked the trial court to strike Sheri Kay's affidavit as invalid. The trial court denied plaintiff's motion for relief from judgment. This appeal followed.

## II. AFFIDAVIT FROM SHERI KAY

On appeal, plaintiff argues that the trial court erred when it denied his motion for relief from judgment and motion to strike an invalid affidavit because Farmington Square relied on a willfully false affidavit in procuring summary disposition and a judgment of foreclosure. We disagree.

We review a trial court's decision on a motion for relief from judgment for an abuse of discretion. *Peterson v Auto-Owners Ins Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012) (quotation marks and citation omitted).

In support of its motion for summary disposition and a judgment of foreclosure, Farmington Square relied on an affidavit signed by Sheri Kay, who averred that she was responsible for managing the accounts associated with Farmington Square's properties. In her deposition, Sheri Kay explained that her full legal name is Sharon Kay Davis, but she commonly used the name Sheri Kay when signing defendant's business records. In response to Farmington Square's motion, plaintiff argued that the name "Sheri Kay" is fictitious and the use of that name

on the affidavit submitted by Farmington Square constituted perjury, MCL 750.423(1), rendering the affidavit invalid. The trial court issued an order granting Farmington Square summary disposition and a judgment of foreclosure.

Following the trial court's order, plaintiff moved for relief from the judgment of foreclosure on the ground that the judgment was procured by fraud. Plaintiff argued that he was entitled to have the judgment set aside on the basis of fraud, MCR 2.612(C)(1)(c) because Farmington Square relied in part on an affidavit submitted by its property manager, who signed the affidavit using her commonly used name Sheri Kay, rather than her full legal name, Sharon Kay Davis. The trial court rejected plaintiff's argument that the affidavit was perjurious or fraudulent and denied plaintiff's motion:

> The Court having reviewed these pleadings and hearing oral argument today, the Court is gonna deny the motion for relief from judgment, to strike invalid affidavit. The Court does not find it's invalid.
>
> There's deposition testimony of where Miss Davis was placed under oath, testified that her name is Sherry [sic] Kay Davis. That she goes by Sherry Kay. Therefore, there's no confusion. It was not a fraudulent act and the Court does not find that the motion has merit.

Perjury is a statutory crime that requires proof of a willful false statement under oath regarding any matter or thing. *People v Lively*, 470 Mich 248, 253-254; 680 NW2d 878 (2004); MCL 750.423(1). Similarly, subornation of perjury is a statutory crime in which a person procures another person to commit perjury. MCL 750.424. MCR 2.612(C)(1)(c) allows a trial court to grant relief from judgment because of "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Plaintiff contends that the affidavit submitted by Farmington Square in support of its motion qualifies as a willfully false statement under MCL 750.423, and that Farmington Square suborned perjury by presenting the affidavit, contrary to MCL 750.424, because it knew that the named affiant, Sheri Kay, was not that person's actual name.

Review of the record shows that Sharon Kay Davis routinely used the name Sheri Kay when managing Farmington Square's accounts and records, and that she frequently used the latter name on various business records. Moreover, it is undisputed that plaintiff was aware that Sharon Kay Davis used the name Sheri Kay when managing Farmington Square's accounts and records. Accordingly, there is no basis for concluding that Davis's use of her commonly used name Sheri Kay on the affidavit, rather than her full legal name, was either willfully false or intended to mislead her identity. Therefore, the trial court did not err by refusing to strike the affidavit or abuse its discretion by denying plaintiff's motion for relief from judgment on the ground that the judgment was procured by fraud.

### III. FARMINGTON SQUARE'S COUNTERCLAIM

Plaintiff argues that the trial court erred by granting summary disposition in favor of Farmington Square on its counterclaim. Instead, plaintiff argues that the trial court should have granted plaintiff summary disposition under MCR 2.116(I)(2). Plaintiff argues that he is entitled to relief because (1) Farmington Square relied on stale evidence and the trial court ignored

plaintiff's newly filed affidavit that established a genuine issue of material fact; (2) the trial court shortened the statutory redemption period in its order; (3) the trial court increased the redemption amount in its order; (4) the trial court lacked jurisdiction to order the eviction of any occupants; and (5) the trial court authorized Farmington Square to seek ex parte relief. Addressing each argument in turn, we disagree.

## A. STANDARD OF REVIEW

We review a trial court's decision regarding a motion for summary disposition de novo. *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020). Under MCR 2.116(C)(10), a party is entitled to summary disposition when the evidence does not present a genuine issue of material fact. *Jewett*, 332 Mich App at 470. "A genuine issue of material fact exists when the record, viewed in the light most favorable to the nonmoving party, leaves open an issue upon which reasonable minds might differ." *MacDonald v Ottawa Co*, 335 Mich App 618, 622; 967 NW2d 919 (2020) (quotations marks and citation omitted). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Jewett*, 332 Mich App at 470 (quotation marks and citation omitted). This includes "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). "A court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted; emphasis omitted). We do not make factual findings or weigh credibility. *Burkhardt v Bailey*, 260 Mich App 636, 647; 680 NW2d 453 (2004). Under MCR 2.116(I)(2), "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

## B. STALE EVIDENCE

Plaintiff first argues that it was improper for Farmington Square to rely on plaintiff's deposition testimony from December 2018 in support of its motion for summary disposition because that testimony was given more than three years before Farmington Square filed its amended counterclaim in December 2021, and consequently, this evidence was stale. Plaintiff cites *Roudabush v Roudabush*, 62 Mich App 391, 395; 233 NW2d 596 (1975), in support of this argument. *Roudabush* involved a child custody dispute in which this Court reversed a custody decision, remanded for further proceedings, and ordered the trial court to conduct an up-to-date investigation to determine what custody arrangement was in the child's best interests. In addition to the fact that cases of this Court decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), that was a fact-specific holding that has no application to this case. Plaintiff cites no other authority in support of his assertion that his 2018 deposition testimony is stale.

The material issue in this case is whether plaintiff's 2018 testimony remained probative of the factual issues associated with Farmington Square's counterclaim, which was based on a failure to pay past-due assessments. Plaintiff admitted in his 2018 deposition that he did not pay the assessments that were then due. Farmington Square amended its counterclaim after the first appeal; however, it did so principally to name plaintiff as an individual party, rather than just as personal representative of his father's estate. Critically, the amendment did not alter Farmington

Square's allegations regarding the past-due assessments, which were the subject of plaintiff's 2018 deposition testimony. Accordingly, plaintiff has not demonstrated that his 2018 admissions that the past-due assessments were not paid were stale.

Relatedly, plaintiff argues that the trial court erred by ignoring his newly filed affidavit, which he submitted in response to Farmington Square's second motion for summary disposition. Plaintiff stated in that affidavit that he made payments to Farmington Square as the estate's personal representative and that he made payments individually after he obtained the property in March 2021. The affidavit included plaintiff's statement that "[a]ny allegation that I owe any money to the Farmington Square Condominium Association . . . is false."

It is well-established that a party cannot create a question of fact by submitting an affidavit that directly contradicts previous deposition testimony. *Bakeman v Citizens Ins Co of the Midwest*, 344 Mich App 66, 76-77; 998 NW2d 743 (2022). However, an affidavit that is offered merely to explain, clarify, or expand upon that deposition testimony is permissible. *Id*. at 77. In this case, plaintiff's 2018 deposition testimony was unequivocal and his newly filed affidavit directly contradicted it in an attempt to create a material issue of fact by stating that no money was owed to Farmington Square, contrary to his admissions in his deposition. Even though plaintiff had since acquired title to the property individually and claimed to have made payments, Farmington Square's counterclaim was based on the failure to pay past-due assessments, which plaintiff admitted were not paid, and plaintiff did not offer any competent evidence that the past-due amounts were ever paid to Farmington Square. Accordingly, the trial court did not err by failing to consider plaintiff's newly filed affidavit.

## C. STATUTORY REDEMPETION PERIOD

Plaintiff also asserts that the judgment of foreclosure erroneously shortened the statutory redemption period because it states that he has "[s]ix (6) months from the date of the Foreclosure Sale, if any is had," to redeem the property. Plaintiff argues that this provision in the judgment was improper because MCL 600.3140(1) provides that a mortgagor has "within 6 months after the sale" to redeem a property subject to a foreclosure sale. This argument is without merit.

MCL 600.3140 is inapplicable because that statute governs mortgage foreclosures. Instead, MCL 559.208 governs lien foreclosures against condominium units. The applicable statute states that "[t]he redemption period for a foreclosure is 6 months from the date of sale . . . ." MCL 559.208(2). Although MCL 559.208(2) also states that a foreclosure of a condominium unit should be conducted in the same manner as a real estate mortgage foreclosure, that merely addresses the manner for conducting the foreclosure. The applicable redemption period is otherwise set forth in MCL 559.208(2), which clearly specifies a redemption period of "6 months from the date of sale[.]" The language in the judgment—providing for a redemption period of "[s]ix (6) months from the date of the Foreclosure Sale"—is consistent with MCL 559.208(2). Accordingly, there is no merit to plaintiff's argument that the redemption period specified in the judgment is incorrect.

D. REDEMPTION AMOUNT

Plaintiff also argues that the trial court erred by failing to follow MCL 600.3140(1) and MCL 600.3145, which limit amounts required to be paid to redeem property to taxes, insurance, and contractual interest, in addition to the underlying debt. Plaintiff argues that the judgment violates MCL 600.3140(1) and MCL 600.3145 because the specified redemption price also included Farmington Square's attorney fees, assessments, late charges, noncontractual interest, and "advances." This argument is without merit.

The trial court explained its calculation of the amount of Farmington Square's lien as follows:

> 1. There is now due and the Counter Defendant hereby owes the Association for Association Assessments through September 28, 2022 the sum of $11,765.40, together with costs in this action incurred to date as follows: Court Cost $144.20; Non-Court Cost $713.92; Late Fees $1,060.00; together with reasonable attorneys' fees, as provided by Article II of the Bylaws, incurred to date in connection with the collection of this matter in the amount of $26,252.50, less payments of $3,841.40, for a total amount secured by the Association's lien of $36,319.62.

> 2. In addition to the monies secured by the Association's lien and which are due and owing from Counter Defendant as set forth in Paragraph 1 above, the lien also secures and Counter Defendant also owes all Association general, special and additional assessments, interest at the rate of seven (7%) percent per annum accrued thereon, and late charges through the date of satisfaction or redemption, and that satisfaction of this Judgment for foreclosure of the Association's lien and/or the redemption of the Property will not be made until and unless all such Judgment amounts, including statutory interest thereon and any additional costs and expenses of the Foreclosure Sale referred to in Paragraph 4 below, are paid . . . .

> 3. The lien shall secure and Counter Defendant shall owe all additional reasonable attorneys' fees and costs that the Association incurs in attempting to collect the aforementioned sums due and owing it throughout and including the redemption period to be determined or on appeal, and thereafter if foreclosure does not take place, together with such additional advances that may be made by the Association to protect its lien as authorized by the Master Deed and Michigan Condominium Act.

Again, plaintiff's reliance on MCL 600.3140(1) and MCL 600.3145 is misplaced because those statutes apply to mortgage foreclosures. The trial court explained that its calculation of damages was based on Farmington Square's bylaws and the Condominium Act. MCL 559.208(1) provides, in relevant part, as follows:

> Sums assessed to a co-owner by the association of co-owners that are unpaid together with interest on such sums, collection and late charges, advances made by the association of co-owners for taxes or other liens to protect its lien, attorney fees,

-8-

and fines in accordance with the condominium documents, constitute a lien upon the unit or units in the project owned by the co-owner at the time of the assessment before other liens except tax liens on the condominium unit in favor of any state or federal taxing authority and sums unpaid on a first mortgage of record, except that past due assessments that are evidenced by a notice of lien recorded as set forth in subsection (3) have priority over a first mortgage recorded subsequent to the recording of the notice of lien. The lien upon each condominium unit owned by the co-owner shall be in the amount assessed against the condominium unit, plus a proportionate share of the total of all other unpaid assessments attributable to condominium units no longer owned by the co-owner but which became due while the co-owner had title to the condominium units. . . .

Further, Farmington Square's bylaws provide, in pertinent part:

(d) Expenses of Collection. The expenses incurred in collecting unpaid assessments, including interest, costs, actual attorney's fees (not limited to statutory fees) and advances for taxes or other liens paid by the Association to protect its lien, shall be chargeable to the Co-owner in default and shall be secured by the lien on his Unit.

In sum, the expenses awarded by the trial court in determining the amount of Farmington Square's lien are authorized by Farmington Square's bylaws and the Condominium Act, MCL 559.208, and are not controlled by MCL 600.3140(1) and MCL 600.3145, the statutes cited by plaintiff. Therefore, we reject this claim of error.

## E. JURISDICTION OVER EVICTION

Plaintiff also argues that it was improper to include in the judgment that, "[i]n case of no redemption, the Association shall be entitled to an order of this Court evicting all occupants from the Property." Citing MCL 600.5704, plaintiff asserts that the trial court lacked jurisdiction to evict any occupants because eviction proceedings are within the jurisdiction of the district court. We disagree.

Plaintiff is correct that district and municipal courts have jurisdiction over summary proceedings to recover possession of premises under MCL 600.5701 *et seq*. However, this case does not involve summary proceedings brought under MCL 600.5701 *et seq*. Plaintiff does not dispute that the circuit court has jurisdiction over foreclosure proceedings. The Condominium Act, MCL 559.208(1) and (2), authorizes judicial actions for foreclosure of a condominium association's lien in the same manner as a foreclosure of a real estate mortgage, and such actions are within the jurisdiction of the circuit court, MCL 600.3101. Additionally, a trial court has continuing jurisdiction to enforce its orders, and MCL 600.3150 expressly provides that a court that enters a foreclosure judgment "may order and compel the delivery of the possession of the premises to the purchaser at the sale." Accordingly, there is no merit to plaintiff's argument that the trial court lacked jurisdiction to enforce its judgment by permitting Farmington Square to obtain an order of eviction for any occupants who remained on the property if it was not redeemed.

F. EX PARTE RELIEF

Plaintiff also challenges the following portion of the judgment:

Out of the proceeds of the Foreclosure Sale[,] the Sheriff, Clerk, Deputy Sheriff, and/or Deputy Clerk for the County of Oakland or his/her duly authorized Deputy or any person so prescribed by the Court shall:

* * *

B. Take receipts for the amounts so paid on the Foreclosure Sale and file same as a report of the Foreclosure Sale, all in accordance with rules and Statutes in such case made and provided. *The Court shall, upon ex parte application by the Association and without the need for notice or hearing, sign an Order Confirming Sale in conformity with the Report of Sale filed.* [Emphasis added.]

Plaintiff argues that the portion of the judgment authorizing ex parte action is improper because it will deprive him of notice before the court enters an order confirming the sale. See *CAJ v KDT*, 339 Mich App 459, 468-469; 984 NW2d 504 (2021); *Al-Maliki v LaGrant*, 286 Mich App 483, 485-486; 781 NW2d 853 (2009). Plaintiff cites *Harvey v Lewis*, 357 Mich 305, 314; 98 NW2d 599 (1959), for the assertion that confirmation of a foreclosure sale requires a "hearing of objections to confirmation of sale." However, that case involved the allegations of conspiracy and fraud in the appointment of a receiver to sell the assets of a defendant corporation. The cited language was a fact-specific holding pertaining to the sale of burial grounds pursuant to a court order, and has no application to this case. See *id*.

Plaintiff's argument lacks merit for the reason that the judgment provides plaintiff with notice that the court may enter an order confirming the sale by the sheriff. Moreover, MCL 600.3150 provides that notice to a defendant in a foreclosure action need not be given when a judgment is entered after foreclosure:

In the original judgment in foreclosure cases the court shall determine and adjudge which defendants, if any, are personally liable on the land contract or for the mortgage debt. *The judgment shall provide that upon the confirmation of the report of sale that if either the principal, interest, or costs ordered to be paid, is left unpaid after applying the amount received upon the sale of the premises, the clerk of the court shall issue execution for the amount of the deficiency, upon the application of the attorney for the plaintiff, without notice to the defendant or his attorney.* The court may order and compel the delivery of the possession of the premises to the purchaser at the sale. [Emphasis added.]

Once property is sold at a foreclosure sale, entry of an order confirming the sale is a mere administrative act because, as the judgment provides, an order confirming the sale must conform to the report of the sale. Accordingly, this action does not involve any substantive ruling for which plaintiff is entitled to notice and an opportunity to be heard.

-10-

## IV.  EVIDENTIARY HEARING

Plaintiff argues that the trial court erred by awarding Farmington Square attorney fees without conducting an evidentiary hearing to determine the reasonableness of the requested fees. We disagree.

"A trial court's decision that an evidentiary hearing is not warranted is reviewed for an abuse of discretion." *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002).

In support of its request for attorney fees, Farmington Square presented an affidavit of its counsel in support of the requested hourly rate, an itemized breakdown of all requested fees and costs, and a copy of the 2020 Economics of Law Practice Attorney Income & Billing Rate Survey in support of the requested hourly rate.  In opposition to Farmington Square's fee request, plaintiff submitted his own affidavit in which he generally asserted that the requested hourly rate and requested amount of fees were unreasonable and requested an evidentiary hearing.  The trial court declined to hold an evidentiary hearing, explaining:

> Uh, the Court will indicate for the record that, uh, there was a previous hearing regarding reasonable, uh, attorney fees, uh, that were previously found to be appropriate, uh, by my predecessor, Judge Hala Jarbou.  Uh, the Court finds no reason at this time to believe that they are not reasonable.

To the extent that the trial court believed that Judge Jarbou's previous award was issued after an evidentiary hearing, it was mistaken.  Judge Jarbou ruled on the previous request for attorney fees, but declined to hold an evidentiary hearing, primarily because plaintiff then lacked standing to challenge the requested fees.  Judge Jarbou further stated, however, that she was able to determine the reasonableness of the requested fees from the documentation submitted by Farmington Square.  Even if the trial court erroneously believed that Judge Jarbou previously conducted an evidentiary hearing, plaintiff failed to offer sufficient support to require an evidentiary hearing on the requested attorney fees.

In *Smith v Khouri*, 481 Mich 519, 532; 751 NW2d 472 (2008), our Supreme Court explained the procedure for determining whether requested fees are reasonable:

> In considering the time and labor involved . . . the court must determine the reasonable number of hours expended by each attorney.  The fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness.  The fee applicant bears the burden of supporting its claimed hours with evidentiary support.  If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence.

When an opposing party challenges the reasonableness of requested attorney fees, the trial court should inquire into the services rendered before approving the amounts requested.  *Cassidy v Cassidy*, 318 Mich App 463, 488; 899 NW2d 65 (2017).  "However, there is no error in failing to conduct an evidentiary hearing if the parties created a sufficient record to review the issue, and

the court fully explained the reasons for its decision." *Id*. (quotation marks and citation omitted). When "the trial court has sufficient evidence to determine the amount of attorney fees and costs, an evidentiary hearing is not required." *John J Fannon Co v Fannon Prod, LLC*, 269 Mich App 162, 171; 712 NW2d 731 (2005).

In this case, plaintiff offered only his own affidavit to challenge the requested attorney fees, but the affidavit contained only conclusory statements that the requested hourly rate and requested amounts were unreasonable. Plaintiff did not explain the factual basis for his belief that the requested hourly rate was unreasonable or indicate what he believed was a reasonable hourly rate. Additionally, he did not identify any services that he believed were unnecessary or excessive, and he only generally referred to the factors that a court should consider to determine the reasonableness of attorney fees without explaining how any of those factors were factually applicable to Farmington Square's requested attorney fees. Therefore, plaintiff failed to present an effective challenge to the requested attorney fees. Conversely, in support of its request for attorney fees, Farmington Square submitted its counsel's affidavit, to which he attached an itemized breakdown of all requested fees and costs. Farmington Square also submitted a copy of the 2020 Economics of Law Practice Attorney Income & Billing Rate Survey, which our Supreme Court has recognized is an appropriate resource to consult in determining the reasonableness of a requested hourly rate. *Smith*, 481 Mich at 530-531.

In sum, the record shows that the trial court had a sufficient record to determine the reasonableness of Farmington Square's requested attorney fees. Plaintiff's mere assertions that the requested hourly rate and requested amounts were unreasonable were insufficient to demonstrate a genuine factual dispute regarding the reasonableness of the requested attorney fees. Accordingly, the trial court did not err by deciding the request for attorney fees on the basis of the materials produced by Farmington Square and denying plaintiff's request for an evidentiary hearing.

## V. PLAINTIFF'S CLAIMS

Plaintiff also argues that the trial court erred by granting defendants' renewed motion for summary disposition of plaintiff's claims because (1) the trial court granted summary disposition before discovery concluded; (2) plaintiff presented a genuine issue of fact regarding Counts 1, II, and III; and (3) plaintiff presented a genuine issue of fact regarding Counts X, XI, and XII. Addressing each in turn, we disagree.

## A. STANDARD OF REVIEW

When it is unclear under which subrule the trial court granted disposition, and "it appears that the court looked beyond the pleadings in making its determination, this Court will consider the motion granted pursuant to MCR 2.116(C)(10)." *DeHart v Joe Lunghamer Chevrolet, Inc*, 239 Mich App 181, 184; 607 NW2d 417 (1999). The trial court appears to have granted summary disposition for defendants under MCR 2.116(C)(10). Summary disposition is appropriate under MCR 2.116(C)(10) when, viewing the evidence submitted by the parties in the light most favorable to the party opposing the motion, there is no genuine issue as to any material fact. *Jewett*, 332 Mich App at 470.

-12-

## B. REVELANT FACTS AND PROCEDURAL POSTURE

After plaintiff's previous appeal, and after plaintiff obtained an assignment of claims from the probate court, the trial court permitted plaintiff to reinstate the claims to allow him to pursue them in his individual capacity. Defendants thereafter filed a renewed motion for summary disposition of plaintiff's claims under MCR 2.116(C)(10). Defendants argued that (1) plaintiff could not prove the elements of a nuisance claim; (2) Farmington Square did not breach the master deed by preventing access to the service room; (3) plaintiff could not assert a claim for breach of the management agreement between Farmington Square and JP Carroll because he was not a third-party beneficiary to that agreement; (4) plaintiff could not prove a violation of the Condominium Act, MCL 559.208(3); and (5) Farmington Square did not breach its bylaws.

Plaintiff responded that the motion was premature because discovery remained open until May 31, 2022. He stated that he intended to conduct additional discovery once he received a response to his requests for admissions. Plaintiff further argued that he could establish claims for a private nuisance (Count I), breach of the master deed (Count II), and breach of contract as a third-party beneficiary (Count III). Addressing the merits of his claims in Counts X, XI, and XII, plaintiff argued that Farmington Square's March 8, 2018 letter was insufficient to comply with the 10-day notice requirement in MCL 559.208(3)(c) for foreclosure by advertisement because the letter was not sent to the estate's last known address. In support of Count XI, plaintiff argued that defendants' failure to comply with MCL 559.208(3) also violated Article II, § 5(b) of its bylaws. Regarding Count XII, plaintiff alleged that defendants also violated Article II, § 5(c) of the bylaws because the March 2018 letter did not notify plaintiff of the possibility of foreclosure by advertisement or indicate that plaintiff could request a judicial hearing by bringing suit against Farmington Square. Plaintiff sought damages after Farmington Square canceled the initial foreclosure by advertisement because the estate was still charged $2,000 for those proceedings. Plaintiff also disagreed with defendants' position that Judge Jarbou had ruled that the March 2018 notice was sufficient for foreclosure by advertisement.

After defendants moved for a protective order regarding discovery, the trial court clarified that the parties had until May 31, 2022, to engage in discovery. Nonetheless, on April 27, 2022, the trial court granted defendants' renewed motion for summary disposition, stating:

> The Court having reviewed pleadings here and oral argument here today, the Court is prepared to render a ruling as to Defendants' renewed motion for summary disposition Counts I, II and III.
>
> The Court finds no evidence of significant harm or damage to the Plaintiff. And so therefore, it—that motion for 1, 2 and 3 is granted.
>
> As to 10, 11 and 12 of the foreclosure by advertisement, the Court will note that Judge Jarbou had previously stated and ruled that there was statutory notice had been met [sic], and although there had been a differing opinion with the Court of Appeals, that specific ruling is binding and was not overturned. And therefore, the Court will grant Defendants' motion as to 10, 11 and 12.

-13-

## C. DISCOVERY

Plaintiff first argues that the trial court erred by granting summary disposition before discovery had concluded. We disagree.

Summary disposition may be premature before completion of discovery on a disputed issue. *Doe v Gen Motors, LLC*, 511 Mich 1038, 1038-1039; 992 NW2d 275 (2023). However, summary disposition is appropriate if there is no fair chance that further discovery will produce factual support for the opposing party's position. *Id*. at 1039. Accordingly, the dispositive question is whether additional discovery presented a fair likelihood of producing factual support for plaintiff's position.

Plaintiff had significant time to conduct discovery before the trial court granted summary disposition on April 27, 2022. Notably, the case had been pending since May 2018. Plaintiff had almost four years to conduct discovery and prepare his case. Although the trial court had allowed discovery to remain open until the end of May 2022, plaintiff did not demonstrate that further discovery was likely to produce any additional support for his claims. Plaintiff asserted that he was waiting for defendants to respond to his requests for admissions. He sought additional discovery regarding a November 24, 2020 e-mail sent by Sheri Kay, when he apparently claimed that defendants had again denied him access to the service room. Plaintiff argued that this was evidence of defendants' intent to breach its obligations to properly maintain the common areas. But plaintiff has not explained how that e-mail supported his claims in his amended complaint, which were based on events in 2018. Accordingly, the trial court did not err by granting summary disposition before the close of discovery.

## D. COUNTS I, II, AND III

Plaintiff next argues that he presented a genuine issue of fact regarding Counts I, II, and III such that the grant of summary disposition in favor of defendants was improper. We disagree.

Regarding the merits of plaintiff's claims for a private nuisance and breach of contract (Counts I, II, and III), the trial court agreed with defendants that there was insufficient proof of damages. First, to prove the private nuisance claim in Count I, plaintiff must show:

> (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [*Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 431-432; 770 NW2d 105 (2009).]

"To prevail in nuisance, a plaintiff must prove significant harm resulting from the defendant's unreasonable interference with the use or enjoyment of property." *City of Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 490; 608 NW2d 531 (2000).

Plaintiff offered no evidence of significant harm to the estate because access to the service room was denied for a brief period of time. Plaintiff asserted that the tenant in the unit wanted to

-14-

access the service room to change Internet providers.  Even if the tenant was inconvenienced by not having access to the service room when requested, plaintiff has not explained how that inconvenience resulted in significant harm to the estate.  Although plaintiff claimed that this drastically reduced the unit's rental and market value, he did not offer any evidence factually supporting this claim.

Second, Counts II and III were premised on breach of contract, which again were premised on the tenant's lack of access to the service room for a brief period.  To prove those claims, plaintiff was also required to prove damages as an element of the claims.  *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).  In *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550-551; 904 NW2d 192 (2017), this Court explained:

> The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach.  Damages must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies. . . .  Although breach-of-contract damages need not be precisely established, uncertainty as to the fact of the amount of damage caused by the breach of contract is fatal.  [Quotation marks and citations omitted.]

Like Count I, plaintiff again failed to explain or factually demonstrate how the estate was harmed by the tenant's lack of access to the service room for a short period.  Accordingly, the trial court did not err by ruling that plaintiff failed to offer proof of damages to support his claims in Counts I, II, and III.

E. COUNTS X, XI, AND XII

Plaintiff also argues that the trial court erred by dismissing Counts X, XI, and XII.  In his amended complaint, plaintiff alleged that these claims were premised on defendants' failure to comply with proper procedures for foreclosing on the condominium unit by advertisement.  However, because defendants ultimately canceled the foreclosure by advertisement and instead proceeded with a judicial foreclosure, plaintiff cannot establish that the estate was damaged by any procedural deficiency in the foreclosure-by-advertisement proceedings.

To prove his claim in Count X for violation of the Condominium Act by failing to provide timely notice, plaintiff could prevail only if he could establish that the estate was adversely affected.  See MCL 559.215(1).  His remaining claims in Counts XI and XII for breach of contract also required him to prove damages.  *Miller-Davis Co*, 495 Mich at 178.

In May 2019, Judge Jarbou previously ruled:

> On April 23, 2018, Defendant/Counter-Plaintiff published a notice of foreclosure in the Detroit Legal News.  That same day, it mailed a letter to Plaintiff advising him of the foreclosure.  On April 27, 2018, the foreclosure notice was posted on Plaintiff's unit.  Defendant/Counter-Plaintiff decided to forego foreclosure by advertisement, and on May 18, 2018, it sent Plaintiff another 10-day lien letter.  On June 27, 2018, Defendant/Counter-Plaintiff filed its Counter-Claim,

asserting a claim for foreclosure of the condominium lien and a claim for the collection of the delinquent assessments.

Significantly, Plaintiff does not dispute that he has defaulted in the payment of ongoing maintenance assessments. In accordance with Article II, Section 3(a) of the Bylaws, the monthly assessment is based on the annual budget which is promulgated by the Board of Directors. The Bylaws are in accordance with MCL 559.169 of the Michigan Condominium Act which provides for the assessment of common expenses as well as contributions of co-owners.

MCL 559.208 allows Defendant/Counter-Plaintiff to foreclose its lien. MCL 559.208(3)(c) states that

> The notice of lien shall be recorded in the office of register of deeds in the county in which the condominium project is located and shall be served upon the delinquent co-owner by first-class mail, postage prepaid, addressed to the last known address of the co-owner at least 10 days in advance of commencement of the foreclosure proceeding.

Defendant/Counter-Plaintiff has complied with all preconditions to foreclosure. In particular, Defendant/Counter-Plaintiff recorded the lien; served it upon Plaintiff by first-class mail, postage prepaid, addressed to his last known address; and waited at least 10 days from the date the lien was served on Plaintiff to file its Counter-Claim. To that end, Defendant/Counter-Plaintiff also complied with Article II, Section 5 of the Bylaws, which follows the requirements of MCL 559.208. Based on the foregoing, Defendant/Counter-Plaintiff is entitled to foreclose its lien.

In addition, Defendant/Counter-Plaintiff seeks attorney's fees and costs. . . . MCL 559.208(1) allows for the recovery of:

> Sums assessed to a co-owner by the association of co-owners that are unpaid together with interest on such sums, collection and late charges, advances made by the association of co-owners for taxes or other liens to protect its lien, attorney fees, and fines in accordance with the condominium documents.

Similarly, Article XVIII, Section 2 of the Bylaws establishes that Defendant/CounterPlaintiff, when entitled to foreclose its lien, is entitled to collect the costs of the proceeding and "such reasonable attorneys' fees (not limited to statutory fees) as may be determined by the court." Article II, Section 5(d) of the Bylaws also provides that the "expenses incurred in collecting unpaid assessments, including interest, costs, actual attorney's fees (not limited to statutory fees) . . . shall be chargeable to the Co-owner in default and shall be secured by the lien on his Unit." Given same, the lien secures all unpaid assessments, expenses/costs of collection, interest, actual attorney's fees, and court costs.

Judge Jarbou awarded attorney fees, costs, and expenses to Farmington Square, which included a $338 publication expense.

Because the foreclosure by advertisement was canceled, plaintiff cannot establish any damages as a result of the alleged lack of notice. Therefore, these claims were properly dismissed. Although plaintiff argued that he was ultimately charged attorney fees and other expenses related to the failed foreclose-by-advertisement attempt (amounting to $2,000), plaintiff was liable for those costs under Farmington Square's bylaws and MCL 559.208(1), as collection costs. As the trial court explained, Farmington Square was entitled to recover its actual attorney fees and all expenses and costs involved in collecting unpaid assessments. Accordingly, plaintiff was obligated to pay the expenses associated with the foreclosure by advertisement for reasons unrelated to the alleged improper notice of the foreclosure by advertisement. Therefore, plaintiff failed to show that he incurred any actual damages related to Farmington Square's attempt to foreclose by advertisement.

In dismissing plaintiff's claims in Counts X, XI, and XII, the trial court followed Judge Jarbou's previous ruling that statutory notice was provided. As noted, Judge Jarbou addressed the notice required for a judicial foreclosure. Plaintiff seems to argue that Judge Jarbou confused the different foreclosure procedures and that it was improper for the trial court to rely on Judge Jarbou's previous ruling when granting the renewed motion for summary disposition. As already explained, however, plaintiff cannot prove that the estate was harmed by the canceled foreclosure by advertisement. Therefore, Counts X, XI, and XII were properly dismissed. Although plaintiff asserts that MCR 2.604(A) permitted the trial court to revisit Judge Jarbou's previous determination that there was proper notice for a judicial foreclosure, plaintiff has failed to show that Judge Jarbou's decision was erroneous. Accordingly, there is no basis for concluding that the trial court erred by following Judge Jarbou's decision.

For these reasons, the trial court did not err by granting defendants' renewed motion for summary disposition under MCR 2.116(C)(10).

VI. LEAVE TO AMEND

Plaintiff finally argues that the trial court erred by denying his request to amend his complaint under MCR 2.116(I)(5). We disagree.

This Court reviews for an abuse of discretion a trial court's ruling to grant or deny leave to amend a pleading under MCR 2.116(I)(5). *Boylan v Fifty Eight, LLC*, 289 Mich App 709, 727; 808 NW2d 277 (2010).

After the trial court granted defendants' renewed motion for summary disposition, plaintiff moved for leave to file a second amended complaint under MCR 2.116(I)(5), arguing that the trial court was obligated to give him the opportunity to amend his complaint under that rule. Plaintiff proposed amending his complaint to add new facts after Farmington Square sent an e-mail on November 24, 2020, stating that it would not provide access to utility installations. Plaintiff alleged such conduct violated the condominium's bylaws by denying him access to common areas. He further intended to change his claim in Count I from a negligent nuisance to an intentional nuisance and intended to amend Count II to allege that Farmington Square violated the Condominium Act by intentionally preventing access to the utility installations in 2020, rather than alleging that it negligently maintained the utility installations in 2018. The trial court denied plaintiff's motion, stating:

-17-

The Court finds that there has been undue delay in filing the motion for leave to amend such that Defendants would be unduly prejudiced if the Court were to allow the amendment. Specifically, Plaintiff knew of the alleged events in November 2020 nearly 18 months ago. Plaintiff had the opportunity to supplement his Complaint in November 2021 when the case was reinstated, but Plaintiff failed to include the allegations at issue. Additionally, discovery in this matter closes in three weeks. As such, Defendant would be prejudiced by being prevented from fully investigating Plaintiff's amended claims.

MCR 2.116(I)(5) provides that when a court grants summary disposition under MCR 2.116(C)(10), it "shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." In *Bailey v Antrim Co*, 341 Mich App 411, 432-433; 990 NW2d 372 (2022), this Court explained:

> "[L]eave [to amend] should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *Decker v Rochowiak*, 287 Mich App 666, 682; 791 NW2d 507 (2010) (quotation marks and citation omitted). With respect "to undue delay, delay, alone, does not warrant denial of a motion to amend. However, a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Id*. (brackets, quotation marks, and citation omitted). "Prejudice to a defendant that will justify denial of leave to amend arises when the amendment would prevent the defendant from having a fair trial." *Knauff v Oscoda Co Drain Comm'r*, 240 Mich App 485, 493; 618 NW2d 1 (2000). Importantly, "[t]he prejudice must stem from the fact that the new allegations are offered late and not from the fact that they might cause the defendant to lose on the merits." *Id*. [Alterations in original.]

The trial court did not abuse its discretion by denying plaintiff's motion to amend on the basis of undue delay. The case remained pending for approximately four years. Although this Court had previously affirmed the trial court's earlier dismissal of plaintiff's claims because plaintiff lacked standing to pursue the claims in his individual capacity and he was not authorized to pursue the claims on behalf of his father's estate, the trial court later permitted plaintiff to reinstate the claims and pursue them individually after he obtained an appropriate assignment from the probate court. Plaintiff knew about the November 24, 2020 e-mail for approximately a year when he was allowed to reinstate his previous claims, but he never sought to amend his complaint to add new allegations related to that e-mail at that time, or at any time thereafter before the trial court granted defendants' renewed motion for summary disposition. This appeared to be another instance in which plaintiff was attempting to use this lawsuit to delay Farmington Square's foreclosure of its lien. The circumstances indicate that plaintiff was acting in bad faith by not pursuing an amendment earlier and that defendants would be prejudiced by the late addition of

new claims based on different allegations.  Accordingly, plaintiff has failed to show that the trial court abused its discretion by denying his motion to amend.[1]

       Affirmed.

                                 /s/ Kathleen Jansen
                                 /s/ James Robert Redford
                                 /s/ David H. Sawyer

---

[1] Defendants also argue that plaintiff failed to procure an assignment from the estate and approval by the probate court to pursue his new claims individually and, because he is not a licensed attorney, he is not permitted to represent the estate in pursuing any new claims.  Although plaintiff asserts that he filed with the trial court a proper assignment of any new claims that he intended to assert in his proposed second amended complaint, the only assignment plaintiff filed with the court is the original assignment issued by the probate court on September 21, 2021.  Therefore, plaintiff has also failed to establish that he had standing to individually pursue the proposed new claims.